# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **ISAAC JONES, JR.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **3:15-cv-01712-AKK** |
| **THE UNIVERSITY OF NORTH** | ) | |
| **ALABAMA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION</u>

Isaac Jones, Jr., filed this lawsuit against the University of North Alabama ("UNA"), alleging one count of sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Doc. 1. The court has for consideration UNA's motion for summary judgment, doc. 21, which is fully briefed, docs. 22; 25; 27, and ripe for review. For the reasons stated more fully below, the motion is due to be granted.

## I.      STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. B*ut see Pace v. Capobianco*, 238 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing

*Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's

position will not suffice; there must be enough of a showing that a jury could

reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.

1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL BACKGROUND

Jones, who is a male and an alumnus of UNA, *see* doc. 23-1 at 7–8, applied

for a position as a buyer in UNA's procurement office, *see* doc. 23-1 at 47.[1]  The

position advertised a maximum salary of $57,388.  *See* doc. 26-2 at 2.   Jones

---

[1] The "Job Posting Preview" listed the "[e]ssential job duties" as follows:

Responsible for Compliance with Alabama Bid Law; Federal Procurement laws and University of North Alabama Policies and Procedures; Purchase order maintenance to include:  Order entry, change order activity, follow up on back orders, expedite delivery of open orders, assist with shipping and delivery problems, and work with departments to disposition orders to closure.  Manage or facilitate communication with the supplier regarding fulfillment of the order; Facilitate resolution of invoice issues or discrepancies by working closely with accounts payable personnel; Research and select vendors on a continual basis to ensure qualified suppliers are appropriately positioned as support is needed. Evaluate and measure vendor performance using a scorecard process.  Meet with sales representative(s) to establish terms and conditions and performance capabilities in an equitable manner.  Strategically evaluate alternate vendors or suppliers to avoid emergency situations and to ensure competitive pricing is achieved; Maintain reports used in completing daily work; Provide quality customer service in the form of daily communications and assistance to faculty, staff and suppliers to ensure equipment and service needs are fulfilled timely, adequately, and appropriately; Provide guidance to faculty and staff in preparing specifications and requisitions; Provide guidance and training on Banner requisitions as well as all University policies.  Attend training and workshops to update business and commodity knowledge; Perform other duties as assigned.

Doc. 26-1 at 2.

submitted an application, resume, and cover letter, in which Jones stated that he has a bachelor's degree in business administration with a major in accounting, doc. 23-1 at 8, and decades of experience in various positions related to procurement/buying for state and federal governmental agencies, *see generally* doc. 23-1 at 46–62.   In his ten-page resume, *see* doc. 23-1 at 53–62, Jones repeatedly described his experience in handling "multi-million" and "multi-billion" dollar transactions, *see id.* at 53–56, 59, 62.   Jones's cover letter stated, in part:

> My education, job experience, and qualifications greatly exceed the "Buyer" job requirements.   As a UNA alumnus, I would like to give back to UNA, in the form of heavily discounted expert procurement services, by processing UNA's procurements in the most complete, timely, and accurate manner, in full compliance with all policies, rules, regulations, and statues [*sic*] (both state and federal).   I understand and acknowledge the posted position is a "Buyer" and I would be honored to fulfill those requirements while maintaining the highest professional standards I have clearly demonstrated over the past 30+ years.
>
> In addition to completing assigned acquisitions, I could be a valuable internal resource for the most complex acquisition UNA may be occasion [*sic*].   I have been a principle [*sic*] participant in awarding and administering (from cradle to death) many multimillion dollar long term complex acquisitions with all of the major State of Alabama's Universities and am familiar with the unique and, in some cases, novel procurement requirements that UNA must meet.

Doc. 23-1 at 46.   Jones also listed his "most recent salary" as "$100/hr."   *See* doc. 23-1 at 48.

The Hiring Committee, which was comprised of four females and one male, *see* doc. 23-3 at 7, used a scoring system that allocated points based on the

4

following fifteen criteria:  vendor management experience; communication skills; attention to detail within documentation; experience working with a variety of people and personalities as internal or external customers; organization skills; evidence of sustainability within a task or profession; valuable commodity knowledge; "seems like a good fit for UNA environment"; "seems like a good fit for the Procurement Office"; evidence of innovation and creativity; evidence of some autonomy and self-motivation; evidence of good decision-making skills and good use of resources; evidence of good computer skills; evidence of strong business ethics; and professionalism.  Doc. 23-2 at 43.  The Committee awarded Jones a score of "4" (or "excellent") in the categories of "vendor management experience," "valuable commodity knowledge of some kind," and "evidence of some autonomy and self-motivation."  *See* doc. 23-3 at 9.  Jones received a score of "0" (or "poor") in the categories of "seems like a good fit for UNA environment" and "seems like a good fit for the Procurement Office," and a score of "1" (or "not very good") in the categories of "communication skills," "professionalism," and "attention to detail within documentation."  *See* docs. 23-3 at 9; 23-2 at 17–19.  The scores resulted in Jones being ranked twentieth out of the forty candidates the Committee deemed minimally qualified for the position.  Doc. 23-2 at 41.

Cindy Conlon, UNA's Assistant Vice President of Business Services and chair of the Hiring Committee, testified that the Committee "viewed [Jones's] cover letter as arrogant because [Jones] suggested that his qualifications 'greatly exceed' the posted job requirements, he would provide UNA 'heavily discounted expert procurement services' and he repeatedly referenced his negotiation of multi-million and multi-billion dollar deals."  Doc. 23-3 at 7; *see also* doc. 23-2 at 18 (wherein Conlon testified that Jones's submission "presented itself in an arrogant manner").  Conlon stated that the Committee "had concerns about placing any employee in a position who believes that they are taking a position beneath them or that they are not being paid for what they determine their value to be."  *Id.*  Conlon also cited "errors in [Jones's] submission," for instance, that he had misspelled the word "statutes" in the "very sentence where he guaranteed accuracy and completeness of his work," failed to capitalize the word "Huntsville" in his application, and misspelled the word "principal" for the pertinent context.  *See id.* at 7–8.  Finally, Conlon noted that Jones's resume was "ten pages long and [Jones] did not seem to [display] any effort . . . to tailor [it] to this particular job."  *Id.* at 8. Another Committee member, Melissa Williams, mentioned during the hiring discussions that Jones's employment history reflected annual salaries exceeding $100,000, which far surpassed the approximately $50,000 salary range assigned to the buyer position.  *See* doc. 23-3 at 9.

Because the Hiring Committee invited only the top nine candidates to interview, *see* doc. 23-3 at 10, Jones did not receive an interview.  Doc. 23-2 at 9. The Committee ultimately interviewed three candidates, all of whom were female, *id.*, and selected Dana Peeden from that group.  *See* doc. 23-3 at 11.  Peeden's application stated that she earned an annual salary of $28,600 in her current position, doc. 23-3 at 12, had "experience working with vendors and managing equipment" and "inventory experience that would fit with the requirement that she monitor the bills to make sure [UNA] was getting what it paid for," and "had handled many aspects of secretarial and administrative tasks."  Doc. 23-3 at 11. Significantly, Peeden's application materials, like Jones's, contained several grammatical and typographical errors.  For example, Peeden typed "i.e," instead of "i.e.," *see* doc. 23-2 at 25, misspelled the word "database," *see id.*, and wrote "August, 2001 to November 2003," *see id.* at 27.   Conlon admitted during her deposition that Peeden's errors did not demonstrate "good attention to detail." Doc. 23-2 at 27.

## III.   ANALYSIS

Title VII makes it unlawful to "fail or refuse to hire" any individual "because of such individual's race, color, religion, sex, or national origin."   42 U.S.C. § 2000e-2(a)(1).  Where, as here, Jones is attempting to prove intentional discrimination through circumstantial evidence, the court utilizes the *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting method of proof. Under this method, Jones bears the burden of establishing a *prima facie* case of sex discrimination. *See Walker v. Mortham*, 158 F.3d 1177, 1183 (11th Cir. 1998). If Jones satisfies his initial burden, then UNA must show a legitimate, non-discriminatory reason for its employment action. *See id.* at 1184. If UNA does so, then Jones must prove that UNA's proffered reason is a pretext for unlawful discrimination. *See Mulhall v. Advance Sec.*, 19 F.3d 586, 597 (11th Cir. 1994). However, "[t]he ultimate burden of persuading the trier of fact that [UNA] intentionally discriminated against [Jones] remains at all times with [Jones]." *See Springer v. Convergys Mgmt. Group, Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

### A. UNA proffers legitimate, nondiscriminatory reasons for failing to hire Jones.

UNA concedes that Jones can establish a *prima facie* case. Doc. 22 at 20. Therefore, the next step in the *McDonnell Douglas* framework requires UNA to articulate a legitimate, nondiscriminatory reason for failing to hire Jones. *See Walker*, 158 F.3d at 1183. UNA has met its burden through its contentions that Jones's submissions contained multiple spelling and grammatical errors, *see* doc. 22 at 24, and that Jones's cover letter conveyed a boastful impression that Jones believed he was "doing UNA a favor by applying for the job," *see id.* at 18, 23. To the extent Jones argues that UNA's perception of him as arrogant is subjective and therefore not worthy of credence, *see* doc. 25 at 21, the court rejects any such

8

contention.    "A   subjective   reason   is   a   legally   sufficient,   legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Chapman v. AI Transp.*, 229 F.3d 1012, 1034 (11th Cir. 2000). *See also Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) ("[A]n employer's use of subjective factors in making a hiring . . . decision does not raise a red flag.  Certainly nothing in our precedent established that an employer's reliance upon legitimate, job-related subjective   considerations   suggests   in   its   own   right   an   intent   to   facilitate discrimination.").  Here, UNA points to several specific facts giving rise to the Hiring Committee's perception of Jones as arrogant, including his statement that, if hired, he would be providing "heavily discounted" services to UNA.  Accordingly, UNA has met its burden of articulating legitimate, nondiscriminatory reasons for failing to hire Jones.

## B. Jones cannot show that each of UNA's proffered legitimate, nondiscriminatory reasons is mere pretext for sex discrimination.

Consequently, the burden shifts to Jones to prove that UNA's reasons are pretext for unlawful sex discrimination. *See Mulhall*, 19 F.3d at 597.  To do this, Jones points out that (1) the selected candidate's (*i.e.*, Peeden's) application materials also contained several spelling and/or grammatical errors, (2) Peeden's application also displayed arrogance, and (3) UNA did not mention its alleged concerns that Jones's application materials were boastful in response to Jones's

EEOC charge, and only articulated this second reason *after* Jones filed this lawsuit. Docs. 25 at 12, 14–17; 26-3 at 3.  As to the first contention, although Peeden did not present herself as the embodiment of an over-qualified candidate willing to sacrifice to take a position beneath her, Peeden's application does also, in fact, contain a few typos.  Based on these, the court agrees with Jones that a reasonable jury could doubt the veracity of UNA's first articulated reason, that is, the lack of attention to detail in Jones's application package, and find that UNA treated Peeden's application more favorably than that of Jones, despite similar spelling and grammatical errors.  *See Jarvis v. Siemens Med. Solutions USA, Inc.*, 460 F. App'x 851, 857 (11th Cir. 2012) (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1279–80 (11th Cir. 2008); *Rojas v. Florida*, 285 F.3d 1339, 1343–44 (11th Cir. 2002)) ("[E]ven where a plaintiff fails to rebut all of the employer's proffered reasons for taking the adverse action, he may still establish pretext by showing that a similarly situated [individual] was treated more favorably.").

Nonetheless, where, as here, "the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut *each* of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007) (citing *Chapman*, 229 F.3d at 1037) (emphasis added). The court therefore turns next to UNA's second reason, *i.e.*, that Jones's application package appeared boastful.  To rebut this assertion, Jones first argues

that Peeden's cover letter also contained a statement that a reasonable jury could deem as "arrogant." Doc. 25 at 22. According to Jones, Peeden's contention that "I would look forward to a further opportunity of meeting with your group . . . .," doc. 26-5 at 2, is a statement that "implies that [Peeden] has better things to do," doc. 25 at 22. Jones explained her logic further, adding that "a cheating husband's wife 'would look forward' to meeting her husband's mistress, but she would rather eat shards of glass." Doc. 25 at 22. This is a very strained interpretation of Peeden's generic and cordial statement, and one which is used by most applicants. The undersigned does not believe that any reasonable juror could view this statement as arrogant or that Peeden was suggesting that she "has better things to do" than try to get a job which would actually pay her significantly more than her then position.

Second, Jones contends that UNA's contention that he is boastful and arrogant is a "shifting reason" not worthy of credence. Jones argues that UNA's failure to mention its perception of Jones as boastful in response to Jones's EEOC charge is proof that it later "tack[ed] on" that reason. *See* doc. 25 at 14, 24–25. Jones is certainly correct that UNA's EEOC response is silent as to this reason, *see* doc. 26-3 at 2–5, and indeed, the Eleventh Circuit has held that "shifting" reasons for an adverse employment action may constitute evidence of pretext. *See Cleveland v. Home Shopping Network*, 369 F.3d 1189, 1194 (11th Cir. 2004). The

Circuit has also stated, however, that "*additional, but undisclosed*, reasons for an employer's decision do not demonstrate pretext." *Landolfi v. City of Melbourne*, 515 F. App'x 832, 835 (11th Cir. 2013) (citing *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998)) (emphasis added). This is especially true when the proffered reasons are not "inconsistent." *See Landolfi*, 515 F. App'x at 835 (citing *Zaben v. Air Prod. & Chemicals, Inc.*, 129 F.3d 1453, 1458–59 (11th Cir. 1997)). Here, the clerical errors in Jones's application materials and his inclusion of arguably boastful statements in his cover letter are certainly not inconsistent reasons for UNA's decision, and UNA's failure to state the Hiring Committee's perception of Jones as boastful in response to Jones's EEOC charge does not give rise to a reasonable inference of pretext. Moreover, there is abundant record evidence that "boastfulness" was not a reason concocted at litigation, but, instead, was one considered by members of the Hiring Committee during their meetings. For example, Conlon testified that

> [t]he Committee believed that Mr. Jones may [have] deem[ed] himself to be far more valuable than the position that involved primarily data entry, clerical, and administrative functions. Committee Member Melissa Williams noted that Mr. Jones' employment history reflected annual salaries exceeding $100,000, which was significantly greater than the approximately $30,000 annual salary assigned to the Buyer position. The significant difference between Mr. Jones' prior salary and the Buyer position salary caused the Committee concern as to whether Mr. Jones would be a good fit in the Buyer position.

Doc. 23-3 at 9.  *See also* doc. 23-2 at 15 ("The committee didn't like [Jones's]
cover letter.  It came across as arrogant and pompous."); 18 ("The presentation of
his documentation presented itself in an arrogant manner," because it "was written
in a way that implied it was beneath this person to take the position, but yet would
be willing to do so, so that it could enhance the environment, but yet wasn't careful
enough to be sure there weren't errors in the document."); 29 ("[I]n his resume, he
is the person negotiating, which does not line up with this job.  He is the person in
this resume that is doing the planning, consultations.  He isn't presenting himself
as the person sitting at a desk processing the paperwork.").  Ethan Humphres,
another member of the Hiring Committee, testified as follows:

> During the Committee's meeting to discuss the applications and
> submissions, I initiated a conversation with my problems with Mr.
> Jones' submission.  In reviewing his submission, the tone of the cover
> letter and materials was, in my view, very arrogant.  The materials
> were presented in a way that Mr. Jones considered himself far above
> this position, but that he was going to do UNA a favor by accepting
> the position.  He bragged that his qualifications "greatly exceed" the
> job requirements, and he submitted an extremely lengthy resume that
> repeatedly boasted of his involvement in multi-billion dollar deals.
> He then went on to suggest that he would provide his services in the
> form of "heavily discounted expert procurement services."  It
> concerned me that Mr. Jones felt that he would be providing charity
> by working for the University.  I questioned the fit of someone in a
> position who sees the position as far beneath their skills or who thinks
> they are doing the University a favor by taking a job.

Doc. 23-5 at 3.

13

In summary, Jones certainly has every right to believe he was overqualified and the best candidate for the position.  However, the selection officials believed otherwise and have explained why they ranked other candidates higher than Jones. Even if this court disagrees with the reasons, it is certainly not a super personnel committee charged with second guessing business decisions.  *See Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1207 (11th Cir. 2013) ("[I]n enacting Title VII Congress did not intend to transform federal courts into a super-personnel department that reexamines an entity's business decisions.  Our job is instead to determine whether the employer gave an honest explanation to justify its hiring decisions.  If the employer gives one, we're not in a position to second-guess [its] business judgment.") (internal quotation marks and citations omitted).  "To avoid summary judgment [Jones] must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination."  *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1228 (11th Cir. 1993).  Jones has failed to rebut each of UNA's proffered legitimate, nondiscriminatory reasons for failing to hire him, and has failed to present any evidence of alleged gender bias.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (a reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason") (emphasis in original).  Therefore, his claim fails.

## IV.   CONCLUSION

For the reasons stated above, UNA's motion for summary judgment, doc. 21, is due to be granted.  The court will enter a separate order contemporaneously herewith.

**DONE** the 6th day of February, 2017.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE
